**In re Arlene WHATLEY, Debtor.**

**Bankruptcy No. 581–1066.**

United States Bankruptcy Court,
N. D. Ohio.

Jan. 12, 1982.

Mark C. Pirozzi, Akron, Ohio, for debtor.

Frederick S. Corns, Akron, Ohio, for BancOhio National Bank.

Harold Corzin, Akron, Ohio, trustee.

### FINDING AS TO MOTION TO COMPEL REAFFIRMATION

H. F. WHITE, Bankruptcy Judge.

The debtor, Arlene Whatley, filed a Chapter 7 proceeding for relief in accordance with 11 U.S.C. of the Bankruptcy Code. BancOhio was duly scheduled as a

---

creditor having a secured claim in the amount of $4,606.40, the secured item being a 1979 Olds Cutlass. The debtor valued the vehicle at $4,500.00.

The Trustee, Harold Corzin, filed a No Asset Report on July 21, 1981 and on September 2, 1981 BancOhio National Bank, formerly known as Akron National Bank, filed an application for abandonment of personal property pursuant to the provisions of 11 U.S.C. 554(b). BancOhio alleges in the application that the lien on the automobile exceeds the fair market value of the said vehicle; however, it indicates that the probable value of the vehicle is $4,500.00 and the amount due is $4,440.99. Therefore, the Bank appears to be fully secured.

The Debtor opposed the application and filed a motion to compel reaffirmation, claiming an executory contract. A hearing was afforded the parties on this matter. The basic facts in this matter are not disputed.

The Court finds that the debtor is the sole support of herself and her child. She is employed as a meat wrapper by Kroger Company, which is the owner of many food stores in Ohio. The debtor is a "floater" in that she works part-time for other Kroger Company employees, as a meat wrapper, who are on vacation or unable to work. Therefore, she is assigned to various stores over a three-county area. The debtor claims that a dependable car is an absolute necessity for her to maintain her employment.

The creditor and debtor agree that the debtor has promptly paid her monthly payments as agreed under the contract of March 7, 1979. There is collision and property damage insurance on the car and there is also credit life and disability insurance on the car for which the debtor pays an additional $606.90 which protects the creditor should the debtor become ill, disabled, or deceased. The debtor, therefore, is not in default of any terms of the purchase money security agreement, page 1 as prepared by the creditor, Form 4–84 Rev. 9/78.

However, the contract on the reverse side, in paragraph 3, does provide: "if Customer-Debtor becomes voluntary or involuntary bankrupt ... then in any of the aforesaid cases all installments of said note shall, at the option of the Secured Party, without notice of said option to any one become at once due and payable ..." The Bank stated that it is their policy never to allow a debtor "bankrupt" to reaffirm any motor vehicle by installment payments regardless of the prior payment record, even if the creditor would sustain a loss by said policy.

There has been no objection to the discharge of the debtor, nor have any complaints been filed for determination of the dischargeability of any debt; therefore, the debtor is entitled to be granted a discharge and the debt to the creditor is a dischargeable debt.

## ISSUE

The issues are: (1) whether a debtor under a Chapter 7 proceeding under 11 U.S.C. may redeem property by reaffirmation on an installment basis from a lien creditor pursuant to 11 U.S.C. Section 722 according to the original terms of the contract without the consent of the creditor and (2) whether the creditor is entitled to rejection or abandonment of said property from the estate?

## DISCUSSION OF LAW

Debtor, Arlene Whatley, originally moved this Court for an Order permitting her to continue payments under an alleged executory contract with BancOhio National Bank. In effect, what Debtor requested of this Court was an Order requiring BancOhio to enter into a reaffirmation agreement with Debtor. Such an order would be necessary as BancOhio, as a matter of policy, refuses to enter into reaffirmation agreements.

Following a pre-trial on the matter, this Court had both parties submit briefs on the legal issues herein involved. In Debtor's Brief it is argued that Debtor's right of redemption pursuant to 11 U.S.C. Section 722 allows her the right to redeem her automobile through payment in install-

ments to BancOhio rather than through a lump-sum payment. Debtor would have this Court hold that 11 U.S.C. Section 722 provides the individual debtor with a sort of "redemption-reaffirmation" right.

A right to redemption is granted the individual debtor in 11 U.S.C. Section 722. That section, new to the Bankruptcy Reform Act of 1978, provides that:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

As this section is new to the Bankruptcy Code, several Courts have been faced, since the effective date of the Code, with the issue as to whether the payment required by this section must be made in a lump sum or whether it may be made in installments. Those courts which have addressed the issue to date have nearly all held that the payment required by this section is a lump-sum payment. *In re Stewart*, 3 B.R. 24 (Bkrtcy. N.D.Ohio 1980); *In re Zimmerman*, 4 B.R. 739 (Bkrtcy.S.D.Cal.1980); *In re Miller*, 4 B.R. 305, 6 B.C.D. 436 (Bkrtcy.E.D.Mich. 1980); *In re Cruseturner*, 8 B.R. 581 (Bkrtcy.D.Utah 1981). But see *In re Carroll*, 7 B.R. 907 (Bkrtcy.D.Ariz.1981).

■ This Court concurs with those courts which have held that 11 U.S.C. Section 722, of itself, requires a lump-sum payment to the creditor. In order to redeem property in installments, the individual debtor must satisfy the requirements of the reaffirmation statute—11 U.S.C. Section 524(c). To hold otherwise would allow debtors to circumvent the strictures placed upon the reaffirmation of debts which strictures were intended by Congress to be for the protection of debtors.

Thus, in order to determine whether debtor may redeem her automobile through installment payments, 11 U.S.C. Section 524(c) must be examined. This section, authorizing the reaffirmation of debts, was passed despite the recommendation of the Commission on the Bankruptcy Laws of the United States that all reaffirmations be unenforceable.[1] The section sets forth specific criteria which must be met in order for a reaffirmation agreement to be binding following the discharge in bankruptcy.[2]

■ In authorizing reaffirmations, 11 U.S.C. Section 524(c) refers to "an agreement between a holder of a claim and the debtor". No authorization is given the Bankruptcy Court to require a creditor, or a debtor, to enter into a reaffirmation agreement.

■ The term agreement is generally construed as being a voluntary, consensual action between two or more persons. See Restatement of Contracts § 3 (1932); Webster's New International Dictionary, Second

---

1. Report of the Commission on the Bankruptcy Laws of the United States H.R.Doc.No. 93–137, 93rd Cong. 1st Sess. (1973) at 177.

2. 11 U.S.C. Section 524(c) covers the reaffirmation of debts and provides that:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
> (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

> (2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;
> (3) the provisions of subsection (d) of this section have been complied with; and
> (4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—
> (A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
> (ii) in the best interest of the debtor; or
> (B)(i) entered into in good faith; and
> (ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

Edition (1956); *In re Vinson,* 5 B.R. 32 (Bkrtcy.N.D.Ga.1980). By using a term which generally implies an action of a voluntary nature, Congress has evidenced its intent that a reaffirmation be a voluntary, consensual action.

In *In re Vinson, supra,* the debtor commenced an adversary proceeding seeking an Order requiring the Farmer's Home Administration to enter into a reaffirmation of the mortgage on the debtor's house. In dismissing the proceedings, the Court stated:

> The secured creditor holding a lien on collateral of the debtor to a discharged debt may not propose an agreement or order to require the debtor to reaffirm; and the debtor likewise may not unilaterally propose an agreement or order to require the creditor to reaffirm. The statute clearly anticipates an executed, voluntary "agreement between" the debtor and creditor prior to the application for approval by the Bankruptcy Court at the discharge hearing. *In re Vinson, supra* at 33.

Debtor could have filed for bankruptcy pursuant to the provisions of Chapter 13 of the Bankruptcy Code. By filing a chapter 13 petition, 11 U.S.C. Section 1325(a)(5)(B)(i) and (ii), would have allowed her to pay the fair market value of the automobile to BancOhio in installments. Debtor chose to file a chapter 7 and accordingly is bound by the requirements of those sections applicable in a chapter 7 proceeding. These sections include 11 U.S.C. Section 722 which requires a lump-sum payment to a creditor in order to redeem and 11 U.S.C. Section 524(c) which requires the consent of both the creditor and debtor to a reaffirmation agreement.

In the absence of a voluntary agreement executed and entered into by both Debtor and BancOhio National Bank, this

Court will not order said creditor to enter into such an agreement. As BancOhio National Bank does not wish to enter into such an agreement, Debtor's motion to allow her to continue payments under the original contract with BancOhio must be denied.

## II

Debtor next argues that her contract with BancOhio is an executory contract within the meaning of 11 U.S.C. Section 365 and that Section 365(e) thereby operates to nullify the acceleration clause[3] in the contract.

The term "executory contract" is not defined in the Bankruptcy Code. The Legislative History for 11 U.S.C. Section 365 does provide some insight into what the drafters of the Bankruptcy Code meant by this term. It is therein stated that:

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 347 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303–6304.

In an article appearing in the Minnesota Law Review, Professor Vern Countryman discusses the meaning of executory contract within the bankruptcy context as follows:

> A contract under which the obligation of both the bankrupt and the other party to the contract are left so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. 57 Minn.L.Rev. 460 (1973).

Under both these definitions, it is evident that the contract in question is no longer an

---

**3.** Paragraph 3 of the contract between BancOhio National Bank and Debtor provides that "... if Customer-Debtor becomes voluntary or involuntary bankrupt, ... then in any of the aforesaid cases all installments of said note shall, at the option of the Secured Party, without notice of said option to any one become at once due and payable ..." Where reference is made to "acceleration clause" or "acceleration upon bankruptcy" clause it is this clause to which the Court is referring.

executory contract. Debtor's contract with BancOhio was for the loan of money to purchase an automobile. As consideration for that loan, Debtor gave BancOhio a promise to repay the loan as well as a security interest in the automobile purchased with the funds. After loaning the money, BancOhio had no further duties to the Debtor other than cancellation of its lien on Debtor's automobile. The performance remaining to be done under the contract was the repayment, by Debtor, of the loan; performance which, in the view of the drafters of the Legislative History for this section, is insufficient to make a contract executory. Moreover, even when considering that upon full repayment BancOhio would be required to cancel the lien, such a duty is not sufficient to make the contract executory. The failure of BancOhio to cancel the lien would not be a material breach so as to excuse Debtor from further performance for by the time cancellation of the lien is necessary, Debtor would have fully performed.

As the contract in question is not an executory contract, Debtor's argument that 11 U.S.C. Section 365(e) applies so as to make the acceleration upon bankruptcy clause unenforceable is not relevant herein. Debtor's argument with regard to the executory nature of her contract with BancOhio National Bank must be rejected.

### III

11 U.S.C. Section 554(b) allows the bankruptcy court, upon request, to order the trustee to abandon property of the estate that is burdensome to the estate or of inconsequential value. BancOhio National Bank has requested that such an Order be granted.

The automobile in question is burdensome and of no value to the estate as the fair market value of the collateral which is the security for the loan exceeds the amount of the loan by only $59.01. When the costs of administration and the debtor's exemption pursuant to Ohio Revised Code 2329.-66(A)(2) are considered, the automobile is of no benefit to this estate.

Therefore, it is this Court's conclusion that Debtor's motion to reaffirm her obligation to BancOhio National Bank by continuing her payments under the contract is denied as the contract is not an executory contract and 11 U.S.C. Section 365(e) is not applicable. The Debtor should be allowed ten days from the date of this Finding and issuing of Order to redeem the 1979 Oldsmobile by paying to BancOhio National Bank the amount owed on the loan. If the Debtor fails to redeem by means of a lump-sum payment to said creditor, then the 1979 Oldsmobile will be abandoned from property of the estate.